CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
FEB - 7 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **VINCE GILMER,** <br> Plaintiff, | Civil Action No. 7:11-cv-00456 |
| v. | **MEMORANDUM OPINION** |
| **DR. THOMPSON, et al.,** <br> Defendants. | By:    Hon. Jackson L. Kiser <br>        Senior United States District Judge |

Vince Gilmer, a Virginia inmate proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff names as defendants Dr. Thompson, a medical doctor at the Wallens Ridge State Prison ("WARSP"); Dr. Krissnappa, a psychiatrist at the WARSP; and Lt. Hamilton, a WARSP correctional officer. Plaintiff alleges that the medical treatment he receives at the WARSP from Drs. Thompson and Krissnappa violates the Eighth Amendment of the United States Constitution. Plaintiff alleges that Lt. Hamilton interfered with plaintiff's treatment by denying him grievance forms he needed to alert prison officials and medical staff of the doctors' Eighth Amendment violations. Plaintiff remains incarcerated at the WARSP.

Presently before the court is plaintiff's motion for a Temporary Restraining Order ("TRO"). Plaintiff requests a TRO to have an Emergency Medical Hearing for Dr. Sanjay Gupta of CNN and Dr. Matthew Rudorfer of the National Institutes of Mental Health to explain plaintiff's homicidal SSRI withdrawal. Plaintiff began a hunger strike to force Dr. Krissnappa to issue him Celexa, a mental health prescription. Sgt. Coleman consequently shut off the water in plaintiff's cell until plaintiff ends his hunger strike, and plaintiff drank four cups of "pee water."[1] A qualified mental health practitioner allegedly told plaintiff that plaintiff would starve to death before plaintiff receives a transfer to another correctional facility as a result of his hunger strike. Plaintiff previously alleged that he "can't quit screaming because [he] ha[s] No Control and . . . MUST MUST MUST KILL Cpl. Hill and any C[orrectional] O[fficer] that comes in [his] cell."

---

[1] Plaintiff does not allege he drank his own urine, but he presumably drank water from the toilet.

(Prior Mot. (no. 22) 1 (original emphasis).) Plaintiff acknowledged he becomes "ridiculously furious" and cannot stop screaming. (Id.)

The purpose of a TRO is to preserve the status quo and avoid possible irreparable injury to a party pending litigation until a hearing may be conducted. See Steakhouse, Inc. v. City of Raleigh, 166 F.3d 634, 637 (4th Cir. 1999) ("The grant of interim [injunctive] relief is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it."). I may issue a TRO without providing notice where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" Fed. R. Civ. P. 65(b). The movant must also establish (1) that he is likely to succeed on the merits, (2) that the balance of equities tips in his favor, and (3) that an injunction is in the public interest. Winter v. Nat'l Res. Defense Council, Inc., 555 U.S. 7, 20-24 (2008). The moving party must certify in writing any effort made to give notice and the reasons why notice should not be required. Fed. R. Civ. P. 65(b).

Plaintiff does not describe any effort he made to give notice of his motion for a TRO and the reasons why notice should not be required. Plaintiff fails to describe how the requested medical testimony and emergency medical hearing would remedy the alleged constitutional deprivations raised in the complaint or a self-imposed hunger strike. See Omega World Travel v. TWA, 111 F.3d 14, 16 (4th Cir. 1997) (stating movant must establish a relationship between the injury claimed in the motion and the conduct giving rise to his complaint). See also In re Microsoft Antitrust Litig., 333 F.3d 517, 526 (4th Cir. 2003) (stating that without this nexus, the court should not consider the factors for preliminary injunctive relief). Sgt. Coleman is not a defendant to this action, and plaintiff does not demonstrate the defendants' knowledge of

2

plaintiff not having water in his cell or drinking "pee water." See Farmer v. Brennan, 511 U.S. 825, 838 (1994) (stating deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk).

Plaintiff does not establish that he is likely to succeed on the merits because he acknowledges in his filings that he frequently met with Drs. Thompson and Krissnappa and disagrees with these doctors' diagnoses and treatments. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (stating a prisoner's disagreement with medical personnel over the course of his treatment does not state a § 1983 claim). Plaintiff does not establish that the balance of equities tips in his favor because he acknowledges that he is being observed by a medical doctor, a psychiatrist, and correctional staff while declaring threats to kill anyone who enters his prison cell. Involving a federal court in the day-to-day administration of a prison is a course the judiciary generally disapproves of taking. See, e.g., Bell v. Wolfish, 441 U.S. 520, 540 n.23, 548 n.29 (1979) (explaining that maintaining security and order and operating institution in manageable fashion are "considerations . . . peculiarly within the province and professional expertise of corrections officials"). Accordingly, plaintiff fails to establish the requirements for a TRO, and I deny his request.

Plaintiff is advised that he is not proceeding in forma pauperis and that he is responsible for serving the complaint within 120 days of December 1, 2011, the date he paid the $350 filing fee after being denied leave to proceed in forma pauperis. See 28 U.S.C. § 1914(a); Fed. R. Civ.

3

P. 4(m)[2]; Robinson v. Clipse, 602 F.3d 605, 608-09 (4th Cir. 2010) (recognizing good cause to delay 120-day service period when in forma pauperis application is pending); Urrutia v. Harrisburg Cnty. Police Dep't, 91 F.3d 451, 453 (3d Cir. 1996) ("An in forma pauperis plaintiff has no control over the amount of time the district court takes to make the § 1915(d) ruling.").

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff.

ENTER: This 7th day of February, 2012.

*/s/ Jackson L. Kiser*
Senior United States District Judge

---

[2] Rule 4(m) states in pertinent part:
> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.